FILED

SEP 29 2006

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA

POSTED ON WEBSITE

NOT FOR PUBLICATION

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA
FRESNO DIVISION

| | | |
|---|---|---|
| In re<br>Ric J. Squaglia,<br>Debtor. | ) | Case No. 04-12017-B-7<br>DC No. JPE-3 |

**MEMORANDUM DECISION REGARDING MOTION TO AVOID JUDICIAL LIENS**

John P. Eleazarian, Esq., appeared on behalf of the debtor, Ric J. Squaglia (the "Debtor").

Gail Bovell-Tong, Esq., appeared on behalf of creditor, Remijia Rodriguez ("Ms. Rodriguez").

Alan D. Meindersee, a creditor, appeared in pro per ("Mr. Meindersee").

Trudi G. Manfredo, Esq., appeared on behalf of interested party, Mary Reid ("Ms. Reid").

**This Memorandum Decision is not approved for publication and may not be cited as authority in any other proceeding.**

Before the court is the Debtor's motion to avoid the judicial liens of Collectibles Management Resources, Remijia Rodriguez, Alan D. Meindersee, and Werner Graf (collectively, the "Judicial Liens"). Collectibles Management Resources and Werner Graf did not appear or oppose the motion. Creditors Rodriguez and Meindersee ("Respondents") did file opposition to the motion. Ms. Reid appeared

149

and offered evidence in support of the motion. This matter was set for trial on February 23, 2006. Respondents failed to comply with this court's Pre-Trial Order and Notice of Trial entered January 6, 2006. Specifically, Respondents failed to lodge with the court a statement of their case together with a list of witnesses and pre-marked copies of their exhibits. The court therefore found that the Respondents had waived the right to an evidentiary hearing, vacated the trial, and took the matter under submission based on the evidence in the record. For the reasons set forth below, the Debtor's motion to avoid the Judicial Liens will be granted.

The court has jurisdiction over this proceeding pursuant to 28 U.S.C. § 1334 and 11 U.S.C. § 522. This is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A), (B) and (K). This memorandum decision includes the court's findings of fact and conclusions of law required by Federal Rule of Civil Procedure 52(a) made applicable to this contested matter by Federal Rule of Bankruptcy Procedure 7052.

**Background.**

This bankruptcy commenced under chapter 7 on March 10, 2004. The Debtor's bankruptcy schedules list the real property located at 4153 West Los Altos in Fresno, California (the "Residence"). The Debtor and his wife, Mary Reid, have been separated since 1996. It is not clear from the record if their marriage has been formally dissolved. Ms. Reid and the children reside in the Residence, but the Debtor does not. The Debtor valued the Residence in his schedules at $135,000. The Debtor and Ms. Reid submitted an appraisal with their pre-trial statement which valued the Residence at $225,000 as of the petition date.[1] According to the deed (Ms.

---

[1]In his pleadings, the Debtor valued the Residence at $292,000 based on the amount of an offer to buy the Residence obtained by the chapter 7 trustee. However, it is not clear when that offer was obtained. The proper time to value property for the purpose of this motion is the date of commencement of the bankruptcy, March 10, 2004. (See In re Dora, 124 B.R. 94, 96 (Bankr. S.D.Cal. 1991)).

Rodriguez's Exhibit D), the title report and declarations submitted in support of the motion, the Debtor and Ms. Reid acquired the Residence from the California Department of Veterans Affairs ("Cal-Vet") in 1989, before they were married. The Debtor's interest in the Residence was immediately assigned to himself and Ms. Reid, as "husband and wife, as joint tenants." That assignment was recorded in the county records with the deed.

The evidence (Ms. Rodriquez's Exhibit G) submitted in opposition to the motion, shows that the Residence was subject to a senior debt to Cal-Vet in the approximate amount of $59,000 at commencement of the case. Based on the Debtor's declaration submitted in support of the motion, the Residence was also subject to unavoidable tax liens in the approximate amount of $46,000. The Debtor and Ms. Reid filed separate tax returns during their marriage and the taxes appear to be the Debtor's separate obligation. The Debtor claimed and appears to be entitled to a $75,000 "family unit" homestead exemption for his interest in the Residence pursuant to 11 U.S.C. § 522(b)(3)(A)[2] and California Code of Civil Procedure § 704.730(a)(2). There were no objections and the homestead exemption is now final.

Debtor seeks to avoid the four Judicial Liens which are listed below in order of priority. All of the Judicial Liens were entered solely against the Debtor and appear to be the Debtor's separate liabilities.

(1) Meindersee holds a judgment against the Debtor from the Fresno County Municipal Court in the amount of $18,862.61 which was recorded as a judgment lien against the Residence on July 2, 1997.

(2) Collectibles Management Resources, A General Partnership, holds a judgment against the Debtor from the Fresno County Municipal Court in the amount of $593.23 which was recorded as a judgment lien against the Residence on October 21, 1997.

[2]Unless otherwise indicated, all chapter, section and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1330, and to the Federal Rules of Bankruptcy Procedure, Rules 1001-9036, as enacted and promulgated before the effective date of The Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. 109-8, Apr. 20, 2005, 119 Stat. 23.

(3) Ms. Rodriguez holds a judgment against the Debtor from the Fresno County Superior Court in the amount of $50,000 which was recorded as a judgment lien against the Residence on May 21, 1999, and re-recorded with Ms. Rodriguez's updated address information on August 26, 2003.

(4) Werner Graf holds a judgment against the Debtor from the Fresno County Superior Court in the amount of $1,649.96 which was recorded as a judgment lien against the Residence on November 13, 2003.

Debtor filed this motion to avoid the Judicial Liens on the grounds that the Judicial Liens impair his homestead exemption. Respondents dispute the characterization of the Debtor's ownership interest in the Residence, the value of the Residence, and the calculation of impairment.

**Issues.**

(1) Is the Residence community property or separate property?

(2) In calculating whether the Judicial Liens impair the Debtor's homestead exemption, what is the proper formula to apply?

(3) Do the Judicial Liens impair the Debtor's homestead exemption after the above calculations?

**Analysis.**

**The Residence is Held in Joint Tenancy.**

The first issue is whether the Residence was held as community property or in joint tenancy. Respondents contend that all of the Judgment Liens relate to debts incurred during the marriage and that they attached to the entire community property interest of the Residence. If the Residence was community property at the time the Judgment Liens were recorded against the Residence, then the full value of the Residence must be considered in the calculation of lien impairment. Conversely, if the Residence was held in joint tenancy at the time the Judgment Liens were recorded, then they only attached to the Debtor's separate interest and the court may use only the Debtor's one-half interest in the calculation.

The Ninth Circuit Bankruptcy Appellate Panel ("BAP") addressed this issue in In re Summers, 278 B.R. 808 (9th Cir. BAP 2002), a case in which the debtor and her non-debtor spouse were married at the time they purchased their residence, but

took title to their residence as joint tenants. As discussed in Summers, the determination of whether the Residence is community property or held in joint tenancy is governed by state law. Id. at 811 citing, In re Mantle, 153 F.3d 1082, 1084 (9th Cir.1998).

Cal.Fam.Code § 750 recognizes that married persons in California may hold property "as joint tenants or tenants in common, or as community property, or as community property with a right of survivorship." Cal.Fam.Code § 760 provides that property is community property unless otherwise provided by statute; however, that section only provides for a rebuttable presumption that property acquired during marriage is community property. Id. at 811, citing, Haines v. Haines, 39 Cal.Rptr.2d 673, 681 (Cal.App. 4th 1995). This presumption can be overcome by evidence that the parties agreed to hold the property as joint tenants, such as a deed showing that the spouses took title to property as joint tenants. Id. at 811, citing, Haines, 39 Cal.Rptr.2d at 682; Estate of Petersen, 28 Cal.App. 4th 1742, 34 Cal.Rptr.2d 449, 454 (1994); In re Pavich, 191 B.R. 838, 844 (Bankr.E.D.Cal.1996). Thus, the deed and the title records, which reflect that the Residence was taken in and held in joint tenancy, rebut the presumption in favor of community property and control in the absence of evidence of a transmutation. Summers, 278 B.R. 811-13.

Ms. Rodriguez argues that Ms. Reid's petition for dissolution of marriage transmuted the nature of the Debtor's interest in the Residence into community property because in it, Ms. Reid referred to the Residence as community property. The court disagrees. California Family Code § 850(b) provides that:

> "[M]arried persons may *by agreement* or transfer, with or without consideration, do any of the following:
>
> (b) Transmute separate property of either spouse to community property."

(Emphasis added.)

///

///

In addition, California Family Code § 852(a) provides that:

> "A transmutation of real or personal property is not valid unless *made in writing by an express declaration that is made, joined in, consented to, or accepted by the spouse whose interest in the property is adversely affected*." (Emphasis added.)

Here, there is no evidence of an agreement between the Debtor and Ms. Reid to change the Residence from joint tenancy to community property. A petition for legal separation is not an agreement, nor does it establish that a transmutation of title occurred. Based on the foregoing, the court finds and concludes that the Residence is not community property, rather the Debtor and Ms. Reid hold, and have always held since the initial purchase, title to the Residence as joint tenants.

**<u>The Value of the Residence is Not More Than $225,000</u>.**

Pursuant to § 522(f)(2), a judicial lien impairs a debtor's homestead exemption to the extent that the sum of the judicial lien, other non-avoidable liens, and the available exemption, "exceeds the value that the debtor's interest in the property would have in the absence of any liens." Bankruptcy Code § 522(a)(2) defines the term "value" to mean "fair market *value as of the date of the filing of the petition* . . . ." (Emphasis added.)

To prevail on a motion to avoid a judicial lien, the debtor must show that (1) he has an interest in the homestead property; (2) he is entitled to a homestead exemption; (3) the asserted lien impairs that exemption; and (4) the lien is a judicial lien. 11 U.S.C. § 522(f)(1)(A); *Morgan v. Federal Deposit Insurance Corp. (In re Morgan)*, 149 B.R. 147, 151 (9th Cir. BAP 1993); *Premier Capital, Inc. v. Philip V. DeCarolis and Timothy P. Smith (In re DeCarolis)*, 259 B.R. 467, 471 (1st Cir. BAP 2001). As the moving party, the debtor carries the burden of proof on all factors. *DeCarolis*, 259 B.R. at 471. However, once the debtor establishes that the value of the exempt property did not exceed the exemption plus the unavoidable liens, the burden shifts to the opponent to prove that the exempt property had a higher value, *i.e.*, that there was non-exempt equity at the commencement of the case.

Here, the parties do not dispute that the Debtor had an interest in the Residence, and there is no dispute as to the validity of the amended homestead exemption. The parties do not dispute that the Judicial Liens are potentially avoidable judicial liens. The parties disagree on whether the Judicial Liens impair the Debtor's exemption. That determination is a function of the value of the Residence.

In support of the motion, the Debtor submitted a declaration in which he valued the Residence at $292,000. However, that valuation was based on hearsay evidence of an offer obtained by the chapter 7 trustee. The Debtor's valuation was not tied to the date of commencement of this case. (See footnote 1 supra.) With their pre-trial statement, the Debtor and Ms. Reid submitted a formal written appraisal which valued the Residence at $225,000 as of the petition date. Although this appraisal was never admitted into the record (the trial was vacated), the court accepts this offer of proof as an admission by the Debtor and Ms. Reid that the Residence was not worth less than $225,000 at the commencement of the case. In opposition to the motion, Respondents offered their opinions that the value of the Residence is as high as $340,000.

Respondents offered their opinion of value of the Residence pursuant to Fed.R.Ev. 701. The Debtor offered the opinion of an expert witness pursuant to Fed.R.Ev. 702. Respondents are not qualified as experts to appraise the Residence, or to give an opinion regarding the value differences between the Residence and the comparable properties. Respondent's testimony is subject to the same critical analysis as that of an independent appraiser. The court must determine how much weight to give the competing opinions of value. Based on the differences between the parties' respective positions, the court must carefully scrutinize the methods by which the competing opinions were derived.

Respondents appear to have obtained valuation information about houses in near proximity to the Debtor's Residence. The date of the valuation information is not concurrent with the petition date. In addition, Respondents appear to have taken

the highest values that were listed and used them as a basis for valuing the Residence. This methodology forms an insufficient basis on which to base a rational opinion of value. When the lay witness is unable to provide a detailed explanation of how he or she arrived at a value for the property, the testimony may be insufficient to establish in the court's mind an "actual belief . . . derived from the evidence" as to the validity of the offered opinion. *Russell*, Bankruptcy Evidence Manuel § 701.2 at page 1218 (West 2006 edition), quoting *In re Brown*, 244 B.R. 603, 612 (Bankr. W.D.Va. 2000). Consequently, the court cannot give much weight to the opinion of the Respondents regarding the value of the Residence. Based on the record in this matter, the court finds and concludes that for purposes of this motion, the value of the Residence is $225,000.

**The Formula for Calculating Non-Exempt Equity.**

The third issue involves the proper formula for calculating whether the Judicial Liens impair the Debtor's homestead exemption. That is, should the Judicial Liens be deducted from the full value of the Residence, or just the Debtor's undivided one-half interest?

The BAP addressed this issue on similar facts in In re Nielsen, 197 B.R. 665 (9th Cir. BAP 1996). In that case, the debtor held a 25% interest in his residence pursuant to a marital separation agreement, though the debtor was still legally married as of the petition date. The residence in that case was encumbered by a judicial lien which was the debtor's separate obligation. The debtor claimed a $75,000 homestead exemption against his interest in the residence. The BAP defined the method for calculating the lien impairment issue as follows:

> We hold that in order to determine the existence of surplus equity, all encumbrances must be deducted from the total value of the residence *before the debtor's fractional interest is determined*. If after deducting the homestead exemption from the debtor's fractional interest in total equity, surplus equity exists, the lien should not be avoided. . . . [It] is common sense in bankruptcy in a lien avoidance context that *joint encumbrances* be deducted from the joint value of the property.

Nielsen, 197 B.R. at 670-71. (Emphasis added.)

Pursuant to Nielsen, the procedure for determining non-exempt equity is as follows. First, the joint encumbrances are subtracted from the total value of the property. Second, the remaining value is divided according to the title to determine the debtor's separate interest. Third, the homestead exemption is subtracted from the debtor's fractional interest. Fourth, the court looks to see if there is any equity left over for judicial liens. In applying the facts of Nielsen, the BAP illustrated the way to calculate non-exempt equity:

> In this case, the residence is valued at $740,000. After deducting the *joint encumbrance* of $219,000, the residence has total equity of $521,000. Nielsen has a twenty-five percent (25%) interest in the total equity which amounts to $130,250. If we deduct the full $75,000 homestead exemption from Nielsen's equity, there is $55,250 in surplus equity to which the lien can attach.

197 B.R. at 672. (Emphasis added.)

Here, only the debt to Cal-Vet appears to be a joint encumbrance. Therefore, the court will first subtract the Cal-Vet obligation from the total value of the Residence, then it will divide out the Debtor's one-half interest. The court will then deduct the unavoidable liens for the Debtors's taxes and the homestead exemption from the Debtor's one-half interest to determine if there is any equity left over for the Judicial Liens.[3]

Subtracting the Cal-Vet encumbrance ($59,000) from the total value of the Residence ($225,000) leaves an equity of $166,000. The Debtor's one-half interest in the Residence therefore equals $83,000. Subtracting the unavoidable tax liens in

---

[3]The Debtor misreads Neilsen to mean that all encumbrances, including the Judicial Liens, must be deducted from the value of the Residence *before* the separate interests are divided. Based thereon, the Debtor asks the court to disregard Neilsen as bad law. The Neilsen decision is ambiguous because the BAP's use of the term "all encumbrances" is actually made with reference to the senior "joint encumbrances." The judicial lien, which represented the debtor's separate liability wasn't considered until *after* the property was divided. (See analysis in Neilsen quoted above.) It is this court's view that Neilsen fully supports the formula applied herein, that is, the Debtor's separate debts, the taxes and Judicial Liens, do not enter the equation until after the joint encumbrances are deducted and the separate property is divided.

the amount of $46,000 from the $83,000 yields $37,000.[4] Applying and subtracting the $75,000 homestead exemption leaves no equity to which the Judicial Liens can attach. Therefore, the Judicial Liens are avoidable in their entirety.

**Conclusion.**

Based on the foregoing, the court finds and concludes that the Judicial Liens impair the Debtor's homestead exemption. The Debtors' motion to avoid the Judicial Liens will be granted. The Debtor shall submit an order consistent with this Memorandum Decision.

DATED: September 29, 2006

W. Richard Lee
United States Bankruptcy Judge

[4] Even if the court uses the Debtor's value as stated in the moving papers, $292,000, that would not change the result. ($292,000 minus $59,000 equals $233,000, divided by 2 equals $116,500, minus $46,000 leaves only $70,500 for the exemption.)

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA

CERTIFICATE OF MAILING

The undersigned deputy clerk in the office of the United States Bankruptcy Court for the Eastern District of California hereby certifies that a copy of the document to which this certificate is attached was mailed today to the following entities listed at the address shown on the attached list or shown below.

DATED: 10-2-06

By: E. Halstead
Deputy Clerk

EDC 3-070 (New 4/21/00)

Office of the US Trustee
2500 Tulare Street, Room 1401
Fresno, CA 93721

Gail Bovell-Tong
PO Box 5837
Fresno, CA 93710-5837

John Eleazarian
8939 N Chestnut Ave
Fresno, CA 93720

Alan Meindersee
2014 Tulare St #401
Fresno, CA 93721

Mary Reid
4153 W Los Altos
Fresno, CA 93722

Ric Squaglia
2135 E TRENTON
FRESNO, CA 93720

James Salven
PO Box 25970
Fresno, CA 93729